UNITED STATES of America, Plaintiff,

v.

**Leetavious GAINES, and Bogard Liddell, Defendants.**

No. 96–6159–CR–GOLD.

United States District Court, S.D. Florida.

Sept. 8, 1997.

**1438**

Andrea Simonton, Miami, FL, for U.S.

Howard Schumacher, Ft. Lauderdale, FL, for Leetavious Gaines.

Gary Robert Fine, Ft. Lauderdale, FL, for Bogard Liddell.

### ORDER ON DEFENDANTS GAINES' AND LIDDELL'S MOTIONS TO SUPPRESS PHOTO IDENTIFICATIONS

GOLD, District Judge.

Defendant Liddell moves to suppress the photo identification and the in-court identification made by both Kenneth Hopkins and Prince Davis of him as the perpetrator of the robbery on August 30, 1996, at the Lighthouse Point McDonalds. Likewise, Defendant Gaines has moved to suppress the photo lineup which included Defendant Gaines and has further sought to suppress the in-court identification of him by Kenneth Hopkins.

Neither Hopkins nor Davis identified Gaines from the photo line-up. Moreover, Davis made no in-court identification of Gaines. Therefore, the essence of Gaines' motion is to suppress the in-court identification by Hopkins, since the Government does not seek to introduce any photo line-up as against Gaines.

### FINDINGS OF FACT

The Lighthouse Point robbery is the basis for the charges contained in Counts 12 and 13 of the Superseding Indictment. The testimony relative to the robbery by Hopkins and Davis is that on August 30, 1996, two black males entered the McDonalds at approximately 10:05 p.m. The subject subsequently identified as Liddell approached witness Hopkins at the service counter, pointed a gun to Hopkins' head, and ordered Hopkins to open the safe. Hopkins testified that Liddell pulled down his bandanna while he was opening the safe. He said he clearly saw Liddell, and, at the suppression hearing, identified him as one of the perpetrators of the robbery. He also testified that Defendant Gaines had peeled off his ski mask, looked around and quickly replaced it. He testified that he was able to see "a glimpse" of Gaines' face from his forehead down. Although Hopkins conceded he was unable to identify Gaines from the photo line-up, he was positive about his in-court identification.

Immediately after the robbery, witness Hopkins assisted the police in drawing composite sketches of the robbers, one of whom was subsequently identified as Liddell. Subsequently, both Hopkins and Davis were shown a photo line up. The photo line-up was contained inside a photo line-up folder. The folder contained cutouts, through which each of the six photographs appeared, at the time it was shown to each witness. Witness Hopkins viewed the photo line-up on September 6, 1996, and selected the photograph of Defendant Liddell as one of the persons who had robbed the McDonalds. Hopkins initialed and dated this photograph. No other initials were on the photo lineup at that time.

One week later, on September 13, 1996, witness Davis was shown the same photo line-up. The photo line-up was placed in the photo line-up folder in such a way that the initials of witness Hopkins were not visible to witness Davis at the time he viewed the line-up. Witness Davis selected the photograph of Defendant Liddell as one of the robbers, and dated and initialed this photo. He did so without hesitation, although he only was able to observe Defendant Liddell's eyes and head. He testified that his in-court identification was based on his recollection of the events of the robbery, not from seeing Liddell's photo with both sets of initials.

Subsequently, on September 17, 1996, each witness independently provided a tape-re-

corded interview concerning the robbery and his prior identification. During each interview, the witness was shown the photo line-up and was able to observe the initials of the other witness. The Government does not seek to introduce the tape-recorded interviews, conceding that the police work on that date was less than desirable.

After witness Hopkins was shown the photo line-up, which bore both his and Davis' initials, Detective Nestor told Hopkins that he had picked one of the suspects. He also was told that the other suspect (besides Liddell) was one of the eighteen persons included in the photo line-up. However, Hopkins testified that Gaines was not pointed out to him from the photo line-up as the suspect.

## II. CONCLUSIONS OF LAW

In a long line of cases, the United States Supreme Court has held that the admissibility of eyewitness identification testimony is governed by a totality of the circumstances test. That is, both in-court and out-of-court identifications are admissible, even where the procedures used were suggestive, unless the defendant can establish, based on the totality of the circumstances, that the identification is unreliable. The circumstances which must be considered under this test are the opportunity to view the perpetrator at the time of the crime, the degree of attention, the accuracy of a prior description, the level of certainty and the elapsed time. *Manson v. Brathwaite,* 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); *Neil v. Biggers,* 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972); *Simmons v. United States,* 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968).

The Eleventh Circuit Court of Appeals, as well as the former Fifth Circuit Court of Appeals, have applied these guidelines in numerous cases. For example, in *Johnson v. Wainwright,* 523 F.2d 1253, 1255 n. 2 (5th Cir.1975), *cert. denied,* 425 U.S. 961, 96 S.Ct. 1745, 48 L.Ed.2d 207 (1976), the Court held that the simultaneous identification of the suspect by two or more witnesses in the presence of each other was not so impermis-

sibly suggestive that any subsequent in-court identifications had to be per se excluded. *Accord Rudd v. Florida,* 477 F.2d 805 (5th Cir.1973). The court has reached the same result in a variety of circumstances, all of which contained procedures far more suggestive than those utilized in the case at bar. *See, e.g., Dobbs v. Kemp,* 790 F.2d 1499, 1505–06 (11th Cir.1986) (in-court identification testimony reliable despite impermissibly suggestive photo line-ups, where one witness was shown four to five pictures, all of the defendant, and second witness was shown 12 pictures, four of which were of defendant and two of which were persons of a different race), *modified on other grounds,* 809 F.2d 750 (11th Cir.), *cert. denied,* 481 U.S. 1059, 107 S.Ct. 2203, 95 L.Ed.2d 858 (1987); *United States v. Beard,* 775 F.2d 1577, 1578–80 (11th Cir.1985) (admission of pre-trial photographic line-up and in-court identification testimony proper where on the first occasion that the witness was shown a photo line-up, she identified the robber as one of two photos in the line-up (one of which was defendant) and FBI agent said, "You're close," and at second photo line-up, witness identified defendant, and at trial witness identified defendant), *cert. denied,* 475 U.S. 1030, 106 S.Ct. 1235, 89 L.Ed.2d 343 (1986); *United States v. Cannington,* 729 F.2d 702, 711 (11th Cir.1984) (single photo identification procedure was impermissibly suggestive, but motion to suppress in-court identification properly denied); *Code v. Montgomery,* 725 F.2d 1316 (11th Cir.1984) (presence of witness in courtroom while other witness made in-court identification did not render identification procedure so impermissibly suggestive as to give rise to very substantial likelihood of misidentification), *rev'd on other grounds after remand,* 799 F.2d 1481 (11th Cir.1986); *United States v. Harper,* 680 F.2d 731, 734–35 (11th Cir.) (in-court identification not tainted by inadvertent encounter with defendants outside the courtroom), *cert. denied,* 459 U.S. 916, 103 S.Ct. 229, 74 L.Ed.2d 182 (1982); *Lovett v. Florida,* 627 F.2d 706 (5th Cir.1980) (failure to file motion to suppress in-court identification based on allegedly suggestive photo identification procedures was

not ineffective assistance of counsel where only challenge to identification procedures was fact that one witness knew that a prior witness had selected a subject from the displayed photo line-up); *Babers v. Estelle,* 616 F.2d 178 (5th Cir.1980) (in-court identification properly permitted even where witness and husband simultaneously viewed line-up, line-up contained persons dissimilar in appearance to defendant, and after witnesses independently identified defendant by writing his name on pieces of paper, they were told that they had chosen the "right man"), *cert. denied,* 499 U.S. 985, 111 S.Ct. 1645, 113 L.Ed.2d 740 (1991).

In this case, Hopkins and Davis identified Liddell from the photo line-ups without any evidence of suggestiveness. The essential question then is whether the in-court identification by both Davis and Hopkins of Liddell, and Hopkins of Davis, should be suppressed due to the fact that both saw each other's initials on the photo line-up approximately one week later and because Hopkins was told that he correctly identified Liddell. Likewise, as to Gaines, the issue is whether Hopkin's in court identification of Gaines should be suppressed because of his failure to identify Gaines from the photo line-up, and the suggestion that the photo line up he did look at the time of his statement did contain another suspect within the eighteen pictures shown.

 Based on the evidence presented, the Court concludes, after considering the totality of the circumstances, that the in-court identifications were reliable and were not the result of post-identification procedures creating a substantial likelihood of irreparable misidentification. This result is not altered by the fact that after the photo identification was made, each witness saw the initials of the other witness on the photo line-up. Rather, each witness testified that he had a good, close opportunity to view the robber, was certain of his identification, and the identifications occurred, respectively, only one week and two weeks after the robbery occurred. In addition, witness Hopkins provid-

ed information for a composite drawings of both suspects, one of which resembles Liddell. Under these circumstances, whatever minimal suggestiveness occurred due to the presence of both initials on the line-up, and comments made during the taking of the statements, did not create a substantial risk of misidentification at trial warranting suppression of the identifications.

**THEREFORE,** for the reasons stated, it is ordered that the motions to suppress photo and in court identifications are denied.